We'll turn to United States v. Armstead. And for the appellant, we have Scott Sterling. Yes, Your Honor. Okay. And for the appellee, we have Karen Loeffler. Hi, Your Honor. Nice to see you again. Good to see you. Please proceed. Now, Mr. Sterling, we have this case set for 10 minutes per side. So if you'd like to make rebuttal argument, just hold back a few minutes. Thank you, Judge. Good morning. May it please the Court, my name is Scott Sterling. I'm counsel for Appellant Lima-Armstead in this matter. I'd like to bring the Court's attention to the first issue of whether he has a viable claim for error regarding the selection of the jury. In this case, as the Court knows, there were two African-American defendants, my client, Lima-Armstead, and his brother, Akeem, when it appeared that there was only one African-American in the jury pool. Both counsel moved on behalf of their clients to have the trial court move the single African-American member of the panel to a higher number so that he could at least be veneered in question for consideration to sit on the jury. The trial court declined to exercise its discretion in that regard. We don't have any case that says the trial court is required to move a person to interfere with the wheel, so to speak, with the lottery, and move the person to a special point just so you can say, well, there's an African-American that might get on my jury. If any authority that says that's a constitutional violation which is reversible in the case. The closest case is Durand v. Missouri cited in the brief. Durand sets the criteria forward for making the analysis, but I found no case directly on point that would say a trial court could or could not move a person forward from the wheel in order to account for the fact that in a community with 16 percent minority representation, out of 48 people called, only one was African-American. Was there a record made? But that's no basis for setting things aside, is it? No. Just boom, just out of the sky, you just say, well, there's only one there, and therefore there's something wrong? It appeared to us that there was something wrong, that the likelihood that there would be a single African-American in that panel when there's 16 percent representation in the community begged our clients to ask us what's wrong with this picture. Do you have any scientific evidence that the way statistics work is there must indeed be more than one on that particular panel, or else something has gone seriously wrong? I seem to recall from a little bit of science I've studied that one can't do things that way. It's like flipping coins and saying because there's a 50-50 chance if it came up heads right now, tomorrow, it's got to come up tails. That just sounds like very bad statistics. We had no statistical evidence to cite to the trial court, and we realized it was a matter of the trial court's discretion. I'm sorry. Go ahead. I have a question for you. Was there a record made in the trial court, evidence presented, as to the community's racial composition, that is, the percentage of African-Americans in the community? Because I was under the impression that no record was made on that issue, nothing presented. Mr. Kirtner and I were able, because of our previous, some years back, the Alaska jury selection plan was the subject of many challenges in a case that Ms. Geddes was counsel on. And in that, it was learned and remembered through the census data and other information and the Alaska Permanent Fund data that Alaska has a 60 percent minority community. I'm not asking whether you learned with no sense, but was there evidence submitted on that point? Well, we asserted it in our application. This was all done orally during the course of jury selection, so we didn't really have time to put together a brief, as probably all of us would have preferred. Underscoring this, and I realize that there are no cases and that we didn't have statistical evidence, but underscoring this, if you would put yourself in the shoes of these two gentlemen, looking at the people who are going to decide their fate, and seeing that there's no chance that the only person, the only African-American person is going to be, there's no chance that person will make it to the box. That's why we made the application. Was there any evidence submitted that there had been a systematic exclusion of African-Americans? I could find no evidence. Apart from your there's only one person sitting there. That was our evidence, just what we saw. Apart from that fact. Right. No, Your Honor. Is it correct that they use the, how do they get the veneer, they use the permanent fund list and they use the voter registration? They use the voter registration list and the hunting and fishing license list, and then they corroborate the accuracy of the addresses for those folks with the permanent fund data. Yeah. The state court system uses the permanent fund data itself, which is considered to be the most reliable database in Alaska because of the, I guess, the financial incentive behind it. You always want your address to be correct. Permanent fund lets everyone in Alaska get some benefit from the oil, is that what it is? Yes, Judge. And so as a result, anyone who applies is eligible for a check, and that address database is considered to be highly reliable. Well, you had another issue, right? Yes, we had another issue about the enhancement for obstruction of justice based on perjury, and that argument really is an argument that flows from Apprendi, Blakely, Booker, Ameline, et al. In this case, the trial court enhanced Mr. Armstead's sentence by two levels because the judge felt that he had not been truthful in his testimony at the trial about his interaction with the individual who sold him the firearms. The verdict forms are really the key point to think about here. The verdict forms, the special verdict forms that we worked on and submitted and all the parties agreed to, gave the jury the chance to check a box that says, if you think that Mr. Armstead made a false statement, say as to what, either his status as a fugitive or his status as a felon. Now, the jury did not check the boxes that said, we think he lied about being a fugitive. They did check the boxes that said, we think he lied about being a felon. Based on that, the government argued and the trial court agreed that Mr. Armstead had obstructed justice by not testifying truthfully when he said, I told the firearm dealer that I had no Alaska felonies. There were two things that support Mr. Armstead's argument in this case. One is that because they checked that form, that doesn't mean the jury disbelieved Mr. Armstead entirely and believed the firearms dealer representative entirely. It could also mean that the jury found that it was unreasonable under the entrapment by estoppel law for him to rely on whatever the firearms dealer representative was telling him about the difference between Alaska felonies and felonies elsewhere. And to understand this, it's necessary to understand there's a peculiarity of Alaska state law that allows felons under certain circumstances to own guns. I don't know if any other state has this provision, but Alaska does. I thought the district judge made an independent determination that he, the district judge did decide that indeed he had lied and obstructed justice. Is that not true? The district judge did make that decision, Your Honor. All right. So whether the jury did it or not, why is that relevant? Well, because we contend that it should have, if it was going to be an enhancement for that, that that is not a sentencing factor that. Well, what we know under Booker that that's not true anymore. Yeah. That since the guidelines are advisory, it's just not true. You don't have to present those facts. The jury Booker expressly says that. Correct. So we're saying that Mr. Armstead has to be resentenced at a minimum based on that. Based on what? Based on the fact that it wasn't the jury that found he obstructed justice. No. The jury doesn't have to be, have to make the finding. The court can make the finding under Booker. There's no need to submit things to the jury under Booker. That's what Booker says. You don't have to submit it since the guidelines are advisory. So we're not really talking about submitting it to a jury in any event, are we? If we're not, then what we're talking about is that the judge made a mistake in concluding that he obstructed justice. Okay. That's different. Okay. Isn't there also an issue whether the judge, Booker's being read to mean that so long as the guidelines are discretionary, which was the, you know, the remedial order of justice prior, that the judge can make findings, but it has to be discretionary, not mandatory sentencing under the guidelines. That's what I think we all think Booker means now. Now, and there's NBank hearings pending on the Ameline decision of the Ninth Circuit in the sense that there's a government petition pending. So that's a little up in the air. But would you argue that if the judge had discretion under the guidelines rather than feeling that they were mandatory, that the judge might have sentenced your client otherwise to a lower sentence? Based on the record, I don't think so, Judge, to be honest. Judge Singleton was pretty clear in his remarks and his order that he felt that while Mr. Armstead, but for the obstruction issue, would have been deserving of a downward departure, he declined to grant our request for that because of this obstruction issue. What I would submit is that regardless of the, of how Judge Singleton arrived at the decision to conclude that justice had been obstructed, it's, it's, there's nothing in the record that supports it. There's no jury finding. There's nothing. There's no verdict. There's nothing like that. And I realize that that's, that's maybe of no import. But there was nothing to do that. The entrapment by estoppel law permitted Mr. Armstead to testify about what he relied on and what he thought was said. He didn't, you know, the judge substituting his judgment for that of the jury with regard to the credibility of a witness, if that's what the rule is, if that's what's occurred here and that's what judges are permitted to do, then I'm not sure where I'm at with that because it seems to me like if you're going to say, look, we're going to have a trial, and if you testify, the jury's going to decide, going to give instruction that says you can believe some, all, or none of what you say. It doesn't also say in that instruction, and by the way, the judge gets to decide later if you're convicted, whether he believed you to or she believed you to. It doesn't say that. It just puts it in the hands of the jury. Okay. Well, I think the time's up. We appreciate your argument and your travels from Alaska. Where exactly is Wasilla, by the way? Wasilla is about 45 miles up the park's highway from Anchorage on the way to Denali Park. It's on the way to Denali from Anchorage. Right. Okay, great. It used to be an agricultural community. Now I don't know what to call it. I think it's called Sprawl. Is it like a suburb of Anchorage now? It's becoming that, yes, sir. Okay. Well, thank you. You sort of have suburbs, I guess. May it please the Court, I'm Karen Leffler here for the government from Alaska on this case and the next one. What I'd like to do is turn briefly to the Booker issue, and I want to discuss Booker, Mayfield, which I sent the 28J letter in, and Ameline, too, because those are the three cases, obviously, that came out after the briefs were written. And the reason what I want to address is two things. First, the government's position here is there was actually no Sixth Amendment violation for two reasons in this case, and that's why this case is actually governed under Mayfield, a post-Blakely case, as opposed to Ameline, too, in the plain error analysis. Well, Booker seems to suggest that the guidelines are to be interpreted to be discretionary. That's right. And why doesn't that apply whether there's a Sixth Amendment violation or not? It doesn't seem like they could be discretionary for some people and mandatory for others. No, absolutely, Your Honor. They're always, at this point, under the remedial opinion in Booker, the guidelines are always discretionary. So unless Ameline gets changed on NBank, you know, in response to the government's NBank petition, which I guess is still pending, would we have to remand to let the judge resentence with discretion? No. And here's my – the reason is that in Booker itself, it talked about, of course, that you have to have a plain error analysis. In the remedial opinion, it points out that not every case is going to be remanded for resentencing. This is page 769 of the remedial opinion. It says, for example, in cases not involving a Sixth Amendment violation, and my position is there isn't one here, whether resentencing is warranted will, of course, depend on a harmless error analysis. So there have to be situations, and especially where there's no Sixth Amendment violation. And there are two reasons there's no Sixth Amendment violation here. The first reason is on the facts. The definition of a Sixth Amendment violation in Booker, quoting Blakely, and this is their quote, is the right is implicated whenever a judge seeks to improve a sentence – impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant. And in this case, the only add-on was facts reflected in the jury verdict. And the reason we know that is you have to go to the jury instruction. The jury instruction in this case said the defendant could only find – the jury could only find the defendant guilty if the false statement was intended or likely to deceive Alaska Shooter Supply. And the false statement was – I mean, the jury had to have disbelieved the defendant. There's no way to, you know, meander through this. I mean, he obviously did not mislead or deceive Alaska Shooter Supply if he told him, I'm a felon. Well, excuse me, but help me out on this. Why does a jury – a jury's failure to believe somebody translate into perjury? They could fail to believe him for a variety of reasons, not necessarily exclusively that they think he was lying. Well, I guess under this case, I don't see how you could factually not – I mean, we had two diametrically opposed positions. We had the clerk saying, no, he never told me he was a felon. I would have escorted him out, told him he had to leave the store because we can't even have felons in here. And we had Mr. Armstead saying, I told him I had felon – I was an ex-felon from New York, and he told me, write no on the form. We only care about Alaska convictions. And in fact, Judge Singleton said in his own findings, he said, you know, I find it beyond a reasonable doubt. And when he discussed acceptance, he basically said – you know, Judge Singleton said, you know, the jury would not have – you know, almost to a certainty wouldn't have convicted him if they had believed the defendant's story. So it's the government's position. There's no Blakeley question in this case at all because the jury found that he was  Yeah, I'm saying that you could argue that. But of course, Judge Gould is right that the guidelines are discretionary. So you have – you know, there's – if you say in the overall scheme of things, things are done differently. But I'm saying that we have both here. We have both the judge and the jury finding it. That's sort of like the old rule we used to have that if the judgment can be affirmed for any reason, it should be because of the merger of – you also make quite a point out of the 84 months being within 87 months. Right. That's what I want to go to. Therefore, the whole trip is unnecessary. Right. That's what I want to go to because that's Mayfield. Didn't Blakeley make that Mayfield case sort of obsolete? Blakeley was before Mayfield. But Booker – Well, I mean – I don't believe that Booker made the Mayfield case obsolete because the Mayfield cases – we're turning on the error analysis. And when the Mayfield cases said if you got a sentence that was within the range of the maximum that the jury could have imposed. Let's just say there's no two-point add-on here. The sentence here was within the range. The jury could have gone – I mean, you could have gone up to 87 months even without the two-point add-on. And therefore, you don't even have a Sixth Amendment violation because the maximum giving the – saying, okay, the guidelines are laws, the jury has to find maximums, or you have a violation. You don't have a Sixth Amendment violation because the defendant got sentenced less than the maximum that could have been imposed – could have been imposed even absent a two-point addition. Under Booker, you don't have one anyway. Excuse me? Under Booker, you don't have a Sixth Amendment violation anyway. Well, you don't if it's – yeah. Period. I mean, if it's at the discretionary – as long as the judge discretionarily adds it, then you don't have a Sixth Amendment violation. Now, if the judge didn't know he had discretion to give him a sentence below 84 months, for example. Well, here – And he couldn't have known that he had discretion to do that unless he departed, and he may not have had grounds for departure. So if the judge didn't know that, then why shouldn't he have a chance to – and the judge does say, you know, you've done a lot of things to turn your life around, you've done a lot of good things here, you're looking better in a lot of ways. Which is why he gives him the 84-month sentence. I understand that. But maybe he'd have given him 83 months if he could have. And the reason that we don't remand for that is the plain error analysis. Well, let's take plain error analysis. It's error. It's plain. But it doesn't meet Criteria 3 or 4. But does it affect substantial rights? Criteria 3 or 4 in the plain error analysis. Why doesn't it meet 3? Suppose an error of this type is so severe and so – it's so impossible to determine what judges would do that we should presume prejudice. Because it's the defendant's burden. When you have a plain error analysis – No, not if you presume prejudice. It is not the defendant's burden. And the Supreme Court in Olano said there are lots of – there are cases where you can presume prejudice. And those are cases where you just don't know what would have happened. But here I believe that there is evidence in the record, and that generally the plain error analysis is that the defendant has to show a burden. And in sentencing cases – I know what it generally is. That's what I'm saying. Why – since we now have a C change in the whole structure of sentencing, why don't we presume prejudice? Because we have no way in the world of knowing or guessing what that district judge would have done if he had known he could go to 80 months instead of 84. I believe that we do in the record. Because the – as the judge said, the perjury decision was – there was no – there's no way to go anywhere else. The acceptance of responsibility, Judge Singleton said – and it's a common-sense analysis. You don't accept responsibility when you stand up and lie and say he knew all about it and I told him and it's his fault because he told me to do it. And also under the plain error ballast, you still have to discuss – decide whether it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Now, in Amaline 2, the Court said, you know, it does. We had two things here. We have a Sixth Amendment violation in Amaline 2 and we had a huge impact on the sentencing. And they said this is without warning in Amaline 2, the defendant's sentence, the maximum was upped from a possible 12 months to – I think he got 150 months.  of the judicial proceedings. Again, we have no Sixth Amendment violation and we have basically no – you know, we don't have a maximum impact, no warning that you were going to get this maximum sentence. I mean, you couldn't have had a warning. It was the defendant's perjury that added the two points. So both of the main criteria of Amaline 2 that said we're going to remand, we find plain error, don't exist in this record. And if Booker, in the remedial opinion where it says not all cases are going to be remanded, this seems like the case that, you know, where you have very little impact under Mayfield, which I believe is still good law, you have no maximum – the sentence is less than the maximum he could have gotten without a jury finding. And you have a record that says, you know, the judge's finding was exactly what had to be decided here. Then I believe remand is not appropriate. And I do think under the remedial opinion in Booker that plain error does – can't mean every case – it's a black letter, we just remand every single case under Booker, regardless of the circumstances of the case, because the court on page 769 says otherwise. If the panel doesn't have any other questions, I think my time is up. Thank you. No questions. Thank you for your argument. And Mr. Shirley, we went over your time, so I think we'll say the case is submitted. But unless – if you have – you came a long way from Alaska. If you want to take a minute of rebuttal, we'll permit that. Sorry to limit you to a minute, but we know you're trained to do that, so. My question is this. If the judge can enhance or depart regardless of what the jury's findings are, then how is it that in this case it was okay for the judge to go upwards, but the jury never weighed in on whether Mr. Arfstad's sentence should be reduced for acceptance of responsibility? If we're not going to submit all the issues to the jury to decide and we're going to reserve them to the court, then it doesn't seem to make sense to me that they can argue that on one hand a two-point enhancement for obstruction is fine, and based on what the jury may have thought, but that the jury never got to think, well, on the other hand, we think he should be – his sentence should be mitigated because of his good works. They were never told about his good works. That would have been impermissible to mention those. I think you can't have it both ways there. That's all I want to say. Thank you for your argument, Mr. Sterling and Ms. Leffler. U.S. v. Arfstad is submitted.
judges: Goodwin, Fernandez, Gould